## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**-vs-**                                                                            **Case No.  6:08-cr-190-Orl-22GJK**

**ADRIAN LAMAR WILLIAMS**

_____

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration at the evidentiary hearing held on November 24, 2008 on

the following motion:

| | |
|---|---|
| **MOTION:** | **MR. WILLIAMS'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS AND REQUEST FOR HEARING (Doc. No. 23)** |
| **FILED:** | **October 20, 2008** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED.**

### I.     INTRODUCTION

On October 20, 2008, Defendant Adrian Lamar Williams (the "Defendant") filed a Motion to

Suppress Evidence and Statements and Request for Hearing (the "Motion"). Doc. No. 23.  The Motion

requests the Court to suppress: 1) all evidence allegedly resulting from the search of 1310 Robinson

Avenue, Kissimmee, Florida (the "Residence") on January 17, 2008 (herein, the "evidence"); and 2)  all

statements the Defendant allegedly made to law enforcement officers on January 17, 2008 (herein, the

"statements"). *Id.*[1] On November 1, 2008, Plaintiff United States (the "Plaintiff") responded in opposition to Defendant's Motion (the "Response"). Doc. No. 26.

The Defendant's Motion presents two issues. First, Defendant seeks to exclude the evidence seized at the Residence on the basis that the affidavit in support of the application for a search warrant contains material misrepresentations or omissions of fact that were intentionally or recklessly made. As to this issue, the Court must first determine whether Defendant has made the threshold showing required for an evidentiary hearing. Second, Defendant seeks to exclude the statements on the basis that he was not given a Miranda and consequently, did not knowingly and intentionally waive his Miranda rights.

On November 24, 2008, a hearing was held on the Motion. Testimony was taken from the Defendant and Kissimmee Police Detectives Mark Morris ("Morris"), Anthony Amada ("Amada"), and Michael Thompson ("Thompson") (herein, collectively referred to as the "Detectives"). At the conclusion of the hearing, the Court denied the Motion as to the Defendant's statements and took the Motion under advisement as to the evidence. *See* Doc. No. 35. The purpose of this Order is to further articulate the grounds for the Court's ruling as to the Defendant's statements and to set forth the Court's ruling on the Motion as to the evidence.

## II.    FACTS

On January 17, 2008, law enforcement officers searched the Residence pursuant to a search warrant ("Search Warrant") issued by the Honorable Margaret T. Waller of Osceola County, Florida. Doc.

---

[1]The Motion states 1310 Robinson Street, but it appears from the Search Warrant that the correct address is 1310 Robinson Avenue. Doc. Nos. 23; 23-2.

-2-

No. 23-2.[2]  The Search Warrant was based solely on an affidavit (herein, the "Affidavit") from Detective

Amada. Doc. No. 23-3.  Among other things, Detective Amada stated the following in the Affidavit:

A.     On January 11, 2008, Detective Amada came in contact with a confidential informant

       ("CI") which advised Amada that "he/she" could purchase narcotics from a male in the

       area of the Residence.[3]

B.     [CI] said that "he/she purchased cocaine previously from Adrian at [the Residence] on a

       consistent basis."

C.     While conducting surveillance at the Residence, Detective Amada observed several

       individuals make short visits that he thought were consistent with illegal narcotic activity.

       Each individual who visited the Residence was greeted on the porch by an individual

       Amada later identified as the Defendant.

D.     On January 11, 2008, the CI and the CI's vehicle were searched by Amada at the

       Kissimmee Police Department with negative results and the CI was given $100.00 and an

       audio transmitting device which would "monitor" the CI's conversation.

E.     While being observed by Amada, the CI went into the Residence and purchased $100.00

       worth of crack cocaine.  Amada states that he could hear "everything going on inside the

       house" and that the "two did not talk" and "no other voices were heard in the house."  The

       CI obtained crack cocaine, returned to the Kissimmee Police Department and was

---

[2]Facts are disputed as to certain events that took place during the arrest of the Defendant which will be discussed below.

[3]The Affidavit sometimes refers to the CI as "he/she" and other times refers to the CI simply as "she" but at the hearing it was clear the CI is a female. Doc. No. 23-3 at 2-3.

        searched again by Amada. The CI wrote a sworn statement of the transaction and picked the Defendant when presented a photo line-up.

F.        On January 12, 2008, the steps outlined in ¶¶ D-E were repeated except the CI received $50.00 worth of cannabis and $50.00 worth of crack cocaine in exchange for the $100.00. The CI then completed a sworn statement regarding the transaction.

G.        In the Affidavit, Detective Amada concluded: "Based on the entire case I believe illegal narcotics are being sold and stored at [the Residence]. Based upon the applicant's [Detective Amada] training and experience, and the foregoing facts, the applicant has probable cause to believe, and does believe, that the evidence listed above will be discovered in or on the property described above."

Doc. No. 23-3 at 1-4. On August 27, 2008, the Defendant was indicted on three counts of possession with the intent to distribute crack cocaine, one count of possession of a firearm in furtherance of drug trafficking, and one count of possession of a firearm by a convicted felon. Doc. No. 4. On September 8, 2008, the Defendant was arrested, entered a plea of not guilty and was ordered detained. Doc. No. 12.

On October 20, 2008, the Defendant filed his Motion. Doc. No. 23. The only evidence presented with the Motion is the Affidavit and the Search Warrant. The Defendant argues the Affidavit contains the following material misrepresentations and/or omissions:

A.        It fails to mention that the police paid the CI $40.00 for each visit to the Residence;

B.        It fails to mention that the state had just dropped a very similar charge against the CI;

C.        It fails to mention that the audio transmitting device had failed to record any of the alleged conversations between the CI and the people at the Residence;

> D.     It fails to mention that normal police procedure would require that any search of a female
>
> be done by another female, not a male officer; and
>
> E.     It fails to mention that normal police procedure would require an undercover officer go
>
> into the Residence to buy drugs.

Doc. No. 23 at 4-5.  Defendant maintains that these "material" misrepresentations or omissions were not

accidental or inadvertent, and therefore, the Affidavit does not show probable cause to search the

Residence. *Id.* at 6-7. The Defendant also maintains that following the search, which led to his arrest, he

was not advised of his *Miranda* warning and consequently, any statements made thereafter should be

suppressed. *Id.* at 7-8.  At the hearing, Defendant testified he was never provided a Miranda warning.

In its Response, Plaintiff states that the Affidavit and Search Warrant at issue were proper in all

respects.  Doc. No. 26 at 4.  Plaintiff maintains that Defendant has failed to make the threshold showing

for an evidentiary hearing pursuant to *Franks*. *Franks v. Delaware*, 438 U.S. 154 (1978). Alternatively,

Plaintiff maintains that law enforcement officers who executed the Search Warrant did so in good faith

reliance on the Search Warrant as properly issued by a neutral and detached judge. *Id.* at 4-5.  Plaintiff

also maintains that any omissions from the Affidavit were not material, and even if they were found to

be material, probable cause would still remain. Doc. No. 26 at 15-21. In regard to the *Miranda* warning,

Plaintiff maintains that Defendant was provided a *Miranda* warning prior to making any statements and

denies the allegations the allegations raised by the Defendant.  Both Detectives Amada and Thompson

testified that Amada advised the Defendant of his *Miranda* rights prior to the commencement of any

questioning. Plaintiff attached to the Motion the Incident Report and Charging Affidavit of Detective

Amada, which state: "I then advised Adrian of his Miranda Warning which he understood and waived."

Doc. Nos. 26; 26-2 at 2-3.

III.     DISCUSSION

   A.      The Affidavit and Search Warrant

        1.       Probable Cause

As noted, Defendant claims that there was insufficient evidence to constitute probable cause for

issuing a search warrant.  Doc. No. 23.  Accordingly, he argues that execution of the allegedly invalid

Search Warrant violated his Fourth Amendment rights, and that the evidence seized during the search

should have been suppressed.  *Id.*

A search warrant affidavit "must contain sufficient information to conclude that a fair probability

existed that seizable evidence would be found in the place sought to be searched."  *United States v.*

*Martin,* 297 F.3d 1308, 1314 (11th Cir.), *cert. denied,* 537 U.S. 1076 (2002).  "Specifically, the affidavit

should establish a connection between the defendant and the residence to be searched and a link between

the residence and any criminal activity."  *Id.*  "The information in the affidavit must also be fresh."  *Id.*

"If an informant is mentioned in the affidavit, the affidavit must also demonstrate the informant's veracity

and basis of knowledge."  *Id.*  "However, when there is sufficient independent corroboration of an

informant's information, there is no need to establish the veracity of the informant."  *Id.*[4]

        2.       The Good Faith Exception

   "*United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), stands for the

principle that courts generally should not render inadmissible evidence obtained by police officers acting

in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable

cause."  *Martin*, 297 F.3d at1313.  Thus, the Supreme Court held that evidence found by law enforcement

---

[4]Internal quotation marks, brackets, and footnotes have been omitted from the foregoing quoted passages from *Martin*.

in good faith reliance on a search warrant issued by a neutral and detached judge is admissible regardless of whether the search warrant was proper pursuant to the Fourth Amendment. *Leon*, 468 U.S. 897. Insofar as is relevant to this case, the *Leon* good faith exception applies unless "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon,* 468 U.S. at 923 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). However, suppression is required "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Martin*, 297 F.3d at 1313 (quoting *Leon,* 468 U.S. at 926).

        3.     *Franks*

"There is . . . a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. However, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155-56. The defendant bears the burden of proof and must make such showing by a preponderance of the evidence. *Id.* at 156. If the defendant accomplishes such burden and the remaining contents of the affidavit fail to establish probable cause, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* Thus, in order to challenge the veracity of a search warrant affidavit, a defendant must first establish that a false statement was included by the affiant in the affidavit, knowingly, intentionally, or with reckless disregard of the truth, and then show that the alleged false statement was necessary to the finding of probable cause.

The Supreme Court in *Franks* provides the following pleading requirement which is mandatory for the Court to hold an evidentiary hearing:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks*, 438 U.S. at 171 (emphasis added). A defendant is not entitled to a hearing if after setting the challenged material to one side, probable cause still remains. *Id.*; *United States v. Reid*, 69 F.3d 1109, 1114 (11th Cir. 1995).

In this case, Detective Amada presented the Affidavit to Judge Margaret Waller. The Affidavit contained ample facts supporting probable cause for the Search Warrant for the Residence. The Affidavit discusses Detective Amada's initial contact with the CI and the surveillance of the Residence which revealed multiple visitors at the Residence for minimal periods of time. The Affidavit describes the two drug transactions that occurred between the CI and the Defendant at the Residence and that the CI wore a monitoring device while in the Residence purchasing the crack cocaine and the cannabis. The Affidavit states that Detective Amada performed a search of the CI and the CI's vehicle immediately before and after each of the transactions that occurred at the Residence . The Affidavit also states that the CI completed a sworn statement following each transaction.

Based upon the information obtained from the CI and his own investigation, Detective Amada prepared the Affidavit for a search warrant for the Residence. Judge Waller reviewed the Affidavit, and determined there was probable cause for issuing the Search Warrant.   The evidence in the Affidavit

demonstrates probable cause for the Search Warrant. The Defendant's challenge to the sufficiency of the Affidavit is without merit. However, even if this Court is mistaken and Detective Amada's Affidavit did not establish probable cause, it certainly was not so defective as to preclude application of the *Leon* exception. Insofar as is relevant to this case, the *Leon* good faith exception applies unless the Defendant can establish that in issuing the warrant, Judge Waller was misled by information in the Affidavit that Detective Amada "knew was false or would have known was false except for his reckless disregard of the truth." *Leon,* 468 U.S. at 923 (citing *Franks*, 438 U.S. 154). The Defendant has not made such a showing.

The first two reasons the Defendant challenges the Affidavit are: 1) Detective Amada failed to mention that the police paid the CI $40.00 for each of the two visits to the Residence; and 2) Detective Amada  failed to mention that the state had just dropped a charge against the CI that is similar to the charge the Defendant is now facing. However, because there is sufficient corroboration of the CI's information contained in the Affidavit, there is no need to establish the informant's veracity. *Martin,* 297 F.3d at 1314. Accordingly, these two challenges of the Affidavit fail. The third argument raised by the Defendant is that Detective Amada failed to mention that the audio monitoring device did not record any of the alleged conversations between the CI and the people at the Residence. However, the Defendant's argument is misplaced. The Affidavit states that the device would <u>monitor</u> the CI's actions at the Residence, which is wholly distinct from the device <u>recording</u> the CI's actions. Defendant does not contest that. Detective Amada could hear what transpired in the Residence through the monitoring device. Accordingly, the Affidavit is not misleading and the Defendant's third argument fails.

The Defendant's final two challenges are that Detective Amada failed to mention that normal police procedure requires the search of a female to be done by another female, not a male officer, and he

failed to mention that normal police procedure requires an undercover officer to go into the Residence

to buy drugs. Doc. No. 23 at 45. With respect to each of these contentions, the Court determines that

neither represent a material misrepresentation or omission made by Detective Amada intentionally or with

reckless disregard of the truth.  Initially, the Court notes that the Affidavit does not contain any statement

about whether or not police policies were followed.  Therefore, in that respect the Affidavit contains no

misrepresentations.  The Affidavit, on its face, makes clear that Detective Amada is male and the CI is

either male or female.[5]  The Affidavit discloses Detective Amada searched the CI before each visit the

CI made to the Residence with negative results. Doc. No. 23-3.  Those facts clearly advised Judge Waller

of the likelihood a male officer conducted the relevant search on a female informant.  Thus, there was no

material omission in regard to any police policy governing cross-gender searches.  It stands to reason that

there would be some limitation as to the extent of the search performed by Detective Amada, and a

thorough statement as to the extent of the search is not material to probable cause.   Thus, in that respect,

the Affidavit does not contain a material misrepresentation and/or omissions.

        With respect to the alleged police procedure that an undercover officer be present at the Residence

to purchase drugs, the Defendant did not provide a copy of the police procedure he relies on.

Nevertheless, the Affidavit clearly discloses that while the CI was observed going to the Residence to

make the purchases at issue and monitored, an officer was not present to witness the purchases.  Thus,

there was no material omission in regard to any police policy requiring that an undercover official be

---

[5]*See supra*, note 3.

present for drug purchases.[6] Thus, the undersigned recommends that the Motion to suppress the evidence obtained at the Residence be **DENIED**.

   B.   *Miranda* **Warnings**

   The Fifth Amendment provides that "[n]o person... shall be compelled in any criminal case to be a witness against himself." U.S.Const. amend. V.   In *Miranda v. Arizona,* 384 U.S. 436 (1966), the United States Supreme Court crafted warnings to serve as a procedural safeguard of a defendant's Fifth Amendment rights during custodial interrogation. *New York v. Quarles*, 467 U.S. 649, 654 (1984).  The police must convey *Miranda*'s essential message to a defendant before custodial interrogation.  Before introducing a statement that is the product of custodial interrogation, the government must prove by a preponderance of the evidence that the defendant voluntarily, knowingly and intelligently waived his *Miranda* rights.  *See Colorado v. Connelly*, 479 U.S. 157, 169 - 70 (1986); *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Coleman v. Singletary*, 30 F.3d 1420, 1426 (11th Cir. 1994).

   In his Motion, Defendant maintains that during the search of the Residence on January 17, 2008, and at the police station following the search, law enforcement improperly questioned him without advising him of his rights. Doc. No. 23 at 7-8.  The Defendant states that he eventually made statements to the officers for which he now seeks suppression. *Id.* at 8.  At the November 24, 2008 hearing, Detectives Amada and Thompson testified that the Defendant was advised of his *Maranda* rights once the Defendant and Detective Amada arrived at the Kissimmee Police Station.  The Defendant, however,

---

   [6]Furthermore, even if the Affidavit were to disclose the violations of police policy that Defendant alleges, the Court finds that such matters are technical and not material, there is no evidence such conduct was intentional or reckless and even if such disclosure had been made, the Affidavit would still present ample evidence of probable cause to search the Residence.

testified that he was not advised of his *Miranda* rights.[7]   The undersigned finds the testimony of

Detectives Amada and Thompson to be credible.[8]  Thus, the undersigned recommends that the Defendant

was given a Miranda warning and did voluntarily, knowingly and intelligently waive his *Miranda* rights.

The Defendant's Motion as to the statements made following his arrest should be **DENIED**.

## III.   <u>CONCLUSION</u>

The Affidavit was sufficient to establish probable cause to search the Residence.  Also, the

Defendant voluntarily, knowingly and intelligently waived his *Miranda* warning. Thus, the Motion as to

the statements and the evidence should be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this

report within **eleven (11) days** from the date of its filing shall bar an aggrieved party from attacking the

factual findings on appeal.

**Recommended** in Orlando, Florida on December 3, 2008.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
   United States Marshal
   United States Attorney
   United States Probation Office

---

[7]Various testimony offered by the Detectives, particularly Detective Amada, conflict with the testimony provided by the Defendant.  Specifically, Detectives Amada and Thompson testified as to certain statements allegedly made by the Defendant. The Defendant testified, in fact, that he made no such statements and seeks their suppression.

[8]Detective Amada's Incident Report and Charging Affidavit also states that he advised the Defendant of his *Miranda* Warning.  Doc. No. 26-2 at 2-3.

United States Pretrial Services Office
Counsel for Defendant